IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AARON McCOY,

        Plaintiff,                No. CIV S-02-0166 MCE CMK P

    vs.

CAL A. TERHUNE, et al.,

        Defendants.          FINDINGS & RECOMMENDATIONS

                              /

        Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action against defendant Baughman, defendant Cangemi, defendant Chastain, defendant Holmes, defendant Jaffe, defendant Kelly, defendant Martel, defendant Mini, defendant Phillips, defendant Pliler, defendant Rosario, defendant Shoemaker and defendant Terhune.  This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302(b)(21) for findings and recommendation on defendants' motion to dismiss.

**I.    Standard of Review**

        A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners

1. Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In considering a motion to dismiss under this
2. standard, the court must accept all allegations of material fact as true and must construe them in
3. the light most favorable to the plaintiff.  See Hospital Bldg. Co. v. Rex Hospital Trustees, 425
4. U.S. 738, 740 (1976); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).
5. All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v.
6. McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than
7. those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).
8.        To determine whether a complaint states a claim upon which relief can be granted,
9. the court generally may not consider materials outside the complaint and pleadings.  See Cooper
10. v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.
11. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or
12. attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;
13. (2) documents whose authenticity is not in question, and upon which the complaint necessarily
14. lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,
15. 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,
16. see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson
17. v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).
18.        Finally, leave to amend a deficient complaint must be granted ". . . [u]nless it is
19. absolutely clear that no amendment can cure the defects."  See Lucas v. Dep't of Corrections, 66
20. F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th
21. Cir. 2000) (en banc).
22. ///
23. ///
24. ///
25. ///
26. ///

## II. Background

Plaintiff brings this action seeking redress for alleged violations of his Eighth and Fourteenth Amendment rights. Specifically, plaintiff claims that while he was housed at California State Prison in Sacramento (hereinafter CSP-S), defendants arbitrarily confined and retained him in administrative segregation (Ad-seg), which imposed an atypical and significant hardship on him. Plaintiff also contends that defendants were deliberately indifferent to his medical needs and applied mental health policies in a discriminatory fashion.[1]

In light taken most favorably to plaintiff, the facts are as follows. Plaintiff asserts that defendants Martel, Holmes, and Baughman were involved in his placement in Ad-Seg on charges of "formenting [sic] violence." (Am. Compl. at ¶ 26.) Plaintiff claims that the defendants used unreliable information in their decision to place him in Ad-Seg. (Am. Compl. at ¶ 27.)

Plaintiff states that on March 29, 2001, defendants Chastain, Martel, Mini, and Shoemaker, who were all members of the Institution Classification Committee (ICC), arbitrarily decided to keep him in Ad-Seg pending the outcome of the investigation into the "formenting violence" charges. (Am. Compl. at ¶ 32-22.) Plaintiff claims that the ICC committee failed to consider his mental health when determining whether to retain him in Ad-Seg. (Am. Compl. at ¶ 31.) Plaintiff states that defendant Shoemaker was aware that plaintiff had pre-existing mental conditions of Schizophrenia, manic depression, and bipolar disorder, and that plaintiff had a documented history of suicide attempts when becoming severely depressed; however, defendants did not adequately address the risk that a prolonged stay in Ad-Seg could have in exacerbating plaintiff's mental state. (Am. Compl. at ¶ 35.)

///

---

[1] Plaintiff included several other claims in his fourth amended complaint. However, pursuant to 28 U.S.C. § 1915A(a), the court screened plaintiff's complaint and determined that plaintiff failed to state a claim on all but the above-mentioned § 1983 claims. (Docs. 32 & 38.)

1    Plaintiff claims that his placement in Ad-Seg imposed an "atypical and significant
2 hardship on him." (Am. Compl. at ¶ 38.) Plaintiff participated in the Correctional Clinical Case
3 Management System (CCCMS), and while he was housed in the general population, he
4 participated in treatment for his serious mental conditions. (Am. Compl. at ¶ 38, 40.) Plaintiff
5 states that he was not able to participate in these programs while in Ad-Seg. (Am. Compl. at ¶ 38-
6 41.) Due to his inability to participate in these activities, plaintiff suffered a deterioration of his
7 mental health. (Am. Compl. at ¶ 41.)

8    Plaintiff again appeared before ICC on April 26, 2001. (Am. Compl. at ¶ 45.)
9 Plaintiff states that ICC choose to keep him in Ad-Seg because there was an investigation about
10 his involvement in a prison gang. (Am. Compl. at ¶ 45.) Plaintiff alleges that ICC again failed
11 adequately consider and evaluate his mental health condition when determining that he should be
12 kept in Ad-Seg, even though plaintiff complained that his mental health was deteriorating. (Am.
13 Compl. at ¶ 49.)

14    Plaintiff alleges that on May 29, 2001, defendants Homes and Phillips attempted to
15 keep him in Ad-Seg by filing a confidential memorandum in support of the false disciplinary
16 charges against plaintiff. (Am. Compl. at ¶ 51, 55.) Plaintiff contends that the disciplinary report
17 charged that plaintiff and his brother planned to attack the C-Facility Program office, assault
18 correctional officers there, and then proceed to the exercise yard area. (Am. Compl. at ¶ 58, n. 2.)
19 On May 31, 2001, ICC held another hearing and, based on the rules violation report, elected to
20 retain plaintiff in Ad-Seg and recommended his transfer to a different facility. (Am. Compl. at ¶
21 57.)

22    Plaintiff claims that defendants Jaffe, Kelly, Pliler, Rosario and Terhune
23 established and applied mental health policies in a discriminatory manner for Ad-Seg inmates
24 which resulted in significant mental and physical hardship for plaintiff. (Am. Compl. at ¶ 66.)
25 Plaintiff alleges that inmates in Ad-Seg who have been placed in the Enhanced Out-Patient
26 program are allowed to receive a number of specialized services for their mental conditions.

(Am. Compl. at ¶ 67:11-16.)   In contrast, plaintiff states that Ad-Seg inmates who are part of CCCMS receive no specialized treatments or services while in Ad-Seg. (Am. Compl. at ¶ 67:17-20.)

Plaintiff claims that defendants have applied the state-wide "Heat Risk Plan" in a discriminatory fashion. (Am. Compl. at ¶ 68.) Plaintiff states that Ad-Seg inmates who take psychotropic medication are allowed to exercise in a yard with a water mister even when outside temperatures exceed 90 degrees. (Am. Compl. at ¶ 69.) However, CCCMS inmates who are taking psychotropic medications are either kept inside or sent inside if the outside temperature exceeds 90 degrees due to the risk of heat stroke; plaintiff asserts this deprives CCCMS inmates of outdoor exercise. (Am. Compl. at ¶ 68.) Plaintiff claims that the policy of depriving CCCMS inmates of outside exercise exacerbated his mental health problems. (Am. Compl. at ¶ 71.)

Plaintiff's final claim is that defendant Cangemi, a medical technical assistant at CSP-S, was deliberately indifferent to his medical needs by "failing or refusing to process [his] numerous 'sick call' requests." (Am. Compl. at ¶ 73.) Plaintiff avers that this conduct was the proximate cause of further mental and emotional distress. (Am. Compl. at ¶ 74.)

**III.    Discussion**

Defendants contend that plaintiff's fourth amended complaint should be dismissed because plaintiff failed to exhaust the prison's administrative grievance system before filing this action.

The Prison Litigation Reform Act requires that prisoners bringing § 1983 actions must exhaust their administrative grievance remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). The exhaustion of prison administrative procedures is mandated "regardless of the relief offered through [such] procedures." Booth v. Churner, 532 U.S. 731, 741 (2001) see also, Woodford v. Ngo, ___U.S.___, 126 S.Ct. 2378 (June 2006) (stating that the PLRA requires proper exhaustion—following all administrative steps properly).The United States Supreme Court has cautioned that it "will not read futility or other exceptions into statutory exhaustion

5

requirements where Congress has provided otherwise." Booth, 532 U.S. at 741 n.6 (2001). The Court has also ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

In California, the state regulations that govern grievance procedures in state jails and prisons provide that inmates "may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). An administrative appeal may progress from an informal review through three formal levels of review. See Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may summarily deny a prisoner's untimely administrative appeal. See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c). To comply with the PLRA exhaustion requirement, a state prisoner in California must file an inmate appeal on each claim concerning prison conditions or events and must proceed to the highest level of administrative review available to him before he seeks judicial relief, regardless of the relief desired by the prisoner.

The Ninth Circuit has held that the PLRA exhaustion requirement is not jurisdictional. See Wyatt v. Terhune, 315 F.3d 1108, 1117 n.9 & 1119 n.13 (9th Cir. Jan. 2, 2003) (citing Rumbles v. Hill, 182 F.3d 1064, 1067-68 (9th Cir. 1999)), petition for cert. filed, (U.S. Apr. 1, 2003) (No. 02-1486). The Ninth Circuit and six other circuit courts have ruled that the exhaustion requirement does not impose a pleading requirement on the prisoner but creates a defense that must be raised and proved by the defendants. See Wyatt, 315 F.3d at 1117-19 (citing cases of the Second, Third, Seventh, Eighth, and D.C. Circuits); see also Casanova v. Dubois, 304 F.3d 75, 77-78 (1st Cir. 2002). But see Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998) (per curiam) (requiring a prisoner to plead exhaustion and provide a copy, if available, of the

administrative decision disposing of the prisoner's claims); <u>Knuckles El v. Toombs</u>, 215 F.3d 640, 642 (6th Cir. 2000).

Here, defendants have submitted records showing that plaintiff failed to submit all of the claims presented in this action to the prison appeals process for consideration and that plaintiff failed to exhaust the claims that he did submit to the prison appeals process.

Plaintiff submitted two 602 inmates appeals which are somewhat related to the claims presented in this action. In one of the appeals, plaintiff requested shock therapy; however, this request was denied at the First Level Review. (Defs.' Ex. A and Ex. B, Attach. 1.) Plaintiff never attempted to appeal the denial at the First Level. (Defs.' Ex. A. ¶¶ 8-10; Ex. B at ¶ 4a.)

Plaintiff's second appeal concerned the placement of himself and another inmate in Ad-Seg. (Defs.' Ex. B at ¶ 4b.) This appeal was screened out because plaintiff had attempted to file the appeal on behalf of himself and another inmate.[2] (Defs.' Ex. B at ¶ 4b, Ex. B, Attach 2.) The appeals office instructed plaintiff in writing that he could not file an appeal on behalf of another inmate. (Defs.'s Ex. B, Attach. 2.) The appeals office instructed plaintiff to remove inmate Johnson from the appeal and to then re-file the appeal. (Defs.'s Ex. B. Attach. 2.) Plaintiff did not re-submit the appeal. (Defs.' Ex. B at ¶ 4b.)

Defendants also provide records showing that, on April 17, 2001, plaintiff's brother, Everett McCoy[3], attempted to file a prison appeal on behalf of himself, plaintiff and inmate Johnson. On June 7, 2001, Everett McCoy voluntarily withdrew the appeal he had submitted and acknowledged his withdraw by signing the appeal. (Defs.' Ex. B at ¶ 5 and Attach. 3.) Everett McCoy submitted another prison appeal on May 13, 2001 on behalf of himself, plaintiff and inmate Johnson, but this appeal was screened out and Everett McCoy was advised

---

[2] Inmates are not permitted to file an appeal on behalf of another inmate. Cal. Code Regs. tit. 15, § 3084.3(7).

[3] Plaintiff's brother Everett is also incarcerated in the California Department of Corrections and Rehabilitation.

that he was not allowed to file appeals on behalf of other inmates. (Defs.' Ex. B at ¶ 6.) Appeal records show that Everett McCoy did not resubmit this appeal and that plaintiff never submitted an appeal on his own behalf. (Defs.' Ex. B at ¶ ¶ 4-6.)

In order for a prison appeal to be exhausted under the PLRA, a prisoner must "properly exhaust" his appeal. See Ngo, supra at *11, *12. This can only happen if the prisoner complies with the prison system's critical procedural rules. See id. Defendants have shown that plaintiff did not comply with the prison system's procedural rules for filing grievances–exhausting at the Director's Level. See Wyatt, 315 F.3d at 1117-19. Accordingly, the court finds that plaintiff failed to properly exhaust his administrative remedies before bringing this suit and recommends that this action be dismissed for failure to exhaust administrative remedies.

### III.    Conclusion

Based on the foregoing, IT IS RECOMMENDED that this action be dismissed, without prejudice, for failure to exhaust administrative remedies prior to filing this action

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 13, 2006.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE